**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tryke Management Services LLC, | No. CV-19-05324-PHX-SRB |
| Plaintiff, | **ORDER** |
| v. | |
| Linx Card Incorporated, et al., | |
| Defendants. | |

The Court now considers Plaintiff Tryke Management Services, LLC ("Tryke")'s Motion for Summary Judgment ("Motion") (Doc. 49, MSJ).

**I.   BACKGROUND**

The background of this case was thoroughly summarized in the Court's February 27, 2020 Order and is fully incorporated herein. (*See* Doc. 52, 02/27/20 Order at 1–6.)

**A.   Limited Factual Background**

Defendant Linx Card, Inc. ("Linx") does not dispute the majority of the factual allegations raised by Tryke's Motion. (*See* Doc. 54, Def.'s Resp. to MSJ ("Resp.") at 1.) Linx does not dispute that it owed Tryke $1,488,537.89 under the 2018 Merchant Services Agreement ("Services Agreement"). (*Id.* at 2; Doc. 50, Pl.'s Statement of Facts ("PSOF") ¶ 10.) Linx does not dispute that it breached the Services Agreement in June 2019 by failing to remit processed card payments to Tryke. (PSOF ¶ 9.) Linx does not dispute that Tryke terminated the Services Agreement on July 19, 2019 and demanded that Linx remit the outstanding $1,488.537.89 balance. (Doc. 50-1, Ex. A, Compl. ¶ 9.) Linx

does not dispute that Linx and Tryke entered into a Forbearance Agreement on July 23, 2019. (PSOF ¶ 11; Doc. 50-3, Ex. 19, Forbearance Agreement ("FA").) Linx does not dispute that the Forbearance Agreement functioned "[a]s an accommodation to Linx," providing Linx additional time to pay its debts under the terminated Services Agreement, as negotiated by Josh Brunner, Tryke's Chief Financial Officer, Patrick Hammond, Linx's Chief Executive Officer, and Sanjeev Dhawan, Linx's legal counsel. (PSOF ¶ 11.)

Linx does not dispute that under the Forbearance Agreement, "Tryke agreed to forbear taking legal action against Linx for non-payment under the Services Agreement in exchange for payment of the Linx Debt comprised of the Monies Owed under the Services Agreement ($1,488,537.89), with Interest thereon, plus a Forbearance Fee ($175,000) and a Redemption Allowance ($18,000) . . . by August 6, 20[19]." (PSOF ¶ 15; FA § 5 (clarifying that "August 6, 2019" is "the Due Date"); Resp. at 2.) Linx does not dispute that the Forbearance Agreement superseded the Services Agreement. (PSOF ¶ 16.) Linx does not dispute that unlike the Services Agreement, "which provided for payment to Tryke upon release of funds from Linx's processor, First Data," the Forbearance Agreement lacks such a precondition. (*Id.* ¶ 23.) Linx does not dispute that the Forbearance Agreement: (1) set a specific deadline for payment; and (2) required Linx to agree that it "has no defenses to its obligation to pay the Linx Debt, no claim of any offset and no claim of recoupment concerning the Linx Debt." (*Id.* ¶¶ 25–26.) Linx does not dispute that Tryke fully performed under the terms of the Forbearance Agreement. (*Id.* ¶ 28.)

Linx does not dispute that it breached the Forbearance Agreement by failing to remit the Linx Debt on August 6, 2019. (*Id.* ¶ 29; Resp. at 2.) Linx does not dispute that on August 8, 2019, Linx and Tryke executed a Forbearance Agreement Extension ("Extension Agreement"), amending the Forbearance Agreement by extending the Linx Debt's due date to September 3, 2019. (PSOF ¶¶ 30–31; Doc. 50-3, Ex. 22, Forbearance Agreement Extension ("EA").) Linx does not dispute that the Extension Agreement states:

> c. Linx will also owe the following amounts as Linx Debt as of the following dates:
>
>  i. An additional $25,000 dollars shall be due as

- 2 -

>> additional Linx Debt as of August 13, 2019 unless all other accrued Linx Debt is paid before that date.
>
> ii. A further $25,000 dollars shall be due as additional Linx Debt as of August 20, 2019 unless all other accrued Linx Debt is paid before that date.
>
> iii. A further $25,000 dollars shall be due as additional Linx Debt as of August 27, 2019 unless all other accrued Linx Debt is paid before that date.
>
> iv. A further $25,000 dollars shall be due as additional Linx Debt as September 3, 2019 unless all other accrued Linx Debt is paid before that date.

(EA §§ 3(c)(i)–(iv); PSOF ¶¶ 31–32; Resp. at 2.) Linx does not dispute that Tryke fully performed under the terms of the Extension Agreement. (PSOF ¶ 33.) Linx does not dispute that it "failed to remit payment as agreed in the Forbearance Agreement and the Extension Agreement." (*Id.* ¶ 34.) According to Tryke, under the Forbearance and Extension Agreements, the remaining balance owed on the Linx Debt is $1,781,537.89, plus interest.[1] (*Id.* ¶ 49.)

### B. Procedural Background

Tryke filed its Motion and accompanying Statement of Facts on February 17, 2020. (MSJ; PSOF.) Tryke moves for entry of summary judgment in its favor as to the breach of contract claim, arguing that, as a matter of law, it is entitled to an award of damages in the amount of $1,781,537.89, plus interest, in addition to attorney's fees and costs. (MSJ at 11.) Linx filed its Response on March 18, 2020.[2] (Resp.) Linx disputes the validity of the $1,781,537.89 balance—the full Linx Debt—arguing that Tryke may only recover the original $1,488,537.89 balance owed under the terminated Services Agreement. (*Id.* at 2.)

## II. LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

---

[1] The Linx Debt includes debts accrued under: (1) the terminated Services Agreement ($1,488,537.89); (2) the Forbearance Agreement ($193,000); and (3) the Extension Agreement ($100,000).
[2] Linx did not file a Statement of Facts or Controverting Statement of Facts.

(1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The materiality requirement means "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law determines the materiality of facts. *Id.* The dispute must also be genuine, meaning the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 242. The Court determines whether there is a genuine issue for trial but does not weigh the evidence or assess its veracity. *Jesinger*, 24 F.3d at 1131.

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). There is no issue for trial unless enough evidence favors the non-moving party. *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50. At the same time, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party cannot create a genuine issue for trial based solely upon subjective belief. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

### III.   ANALYSIS

Linx claims that the additional $193,000 and $100,00 payments owed to Tryke under the Forbearance and Extension Agreements "represent liquidated damages that are excessive and unenforceable under Arizona law." (Resp. at 2.) Tryke maintains that the $293,000 sum "constitutes consideration paid in exchange for [its] forbearance of legal action." (*See* Doc. 55, Pl.'s Reply in Supp. of MSJ ("Reply") at 2, 4.) The success of Linx's argument hinges on its ability to demonstrate a genuine dispute of material fact as to whether the $293,000 sum can be construed as liquidated damages under the Services

Agreement. (*See* Resp. at 2.) For reasons explained below, the Court concludes that Linx has failed to demonstrate such a dispute.

As an initial matter, a liquidated damages clause enables contracting parties to agree in advance to the amount of damages for any breach. *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 393 P.3d 449, 451 (Ariz. 2017). Liquidated damages clauses are only enforceable to the extent that an amount is "reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss." *Id.* at 452 (quoting Restatement Second § 356(1)). Linx primarily relies on *Dobson Bay Club*, wherein the Arizona Supreme Court considered the enforceability of a liquidated damages clause, to support its liquidated damages argument. But Linx's argument is a nonstarter because Linx has failed to put forth any probative evidence (or rebut probative evidence presented by Tryke) that the $293,000 sum constitutes liquidated damages. Linx's reliance on *Dobson Bay Club*, consequently, is of little value. The Court briefly turns to the Forbearance and Extension Agreements to highlight the fundamental defect in Linx's theory: the terminated, superseded Services Agreement.

The Forbearance Agreement is a stand-alone, post-breach agreement wherein Tryke agreed to withhold legal action against Linx and allow Linx additional time to resolve its debt to Tryke in exchange for $193,000. (FA § 4.) Based on the plain language of the Forbearance Agreement, it created a new contractual relationship between Linx and Tryke in relation to a new debt, which at the time encompassed: (1) "monies owed" ($1,488,537.89); (2) interest; (3) a $175,000 forbearance fee; and (4) an $18,000 card redemption allowance. (*Id.*) Taken together, all four sums comprise the (then) Linx Debt, which superseded the $1,488,537.89 debt owed under the terminated Services Agreement. (*Id.* § 2.)

The Court's assessment of the subsequent Extension Agreement proceeds in a nearly identical manner. Like its predecessor, the Extension Agreement is a post-breach agreement that followed Linx's failure to pay the Linx Debt on August 6, 2019. (*See* EA.) Unlike its predecessor, the Extension Agreement only "amends the Forbearance

Agreement in a limited way" by continuing the Linx Debt's due date to September 3, 2019, in exchange for Linx's promise to pay $25,000/week (added to the total Linx Debt) for every week the Linx Debt remains unpaid, up to four weeks. (*Id.* § 3(c)(i)–(iv).)

Put more succinctly, the $293,000 sum owed as part of the Linx Debt was negotiated *after* Tryke terminated the Services Agreement. (*See* Compl. ¶ 9; FA (stating that Forbearance Agreement superseded Services Agreement on July 23, 2019).) Critically, Linx does not dispute that fact. For the $293,000 sum to qualify as liquidated damages under the Services Agreement, there would have to be some probative evidence indicating that the sum was negotiated *in advance* of Linx's breach of the Services Agreement. Linx has not offered any such evidence. Tryke is therefore entitled to judgment as a matter of law on its breach of contract claim.

### IV. CONCLUSION

Linx has failed to demonstrate a genuine dispute of material fact as to whether the $293,000 sum owed under the Forbearance and Extension Agreements constitutes anything other than "consideration paid in exchange for Tryke's forbearance of legal action." (Reply at 4.) The Court grants Tryke's Motion.

**IT IS ORDERED** granting Plaintiff Tryke Management Services, LLC's Motion for Summary Judgment (Doc. 49).

**IT IS FURTHER ORDERED** directing the Clerk to enter Judgment in favor of Plaintiff Tryke Management Services, LLC and against Defendant Linx Card, Inc. in the amount of $1,781,537.89 together with interest accruing from September 3, 2019 until paid.

. . .

. . .

. . .

. . .

. . .

. . .

**IT IS FURTHER ORDERED** directing Plaintiff Tryke Management Services, LLC to submit a motion for attorney's fees and costs in compliance with Local Rule 54.2 within fourteen (14) days of the date of this Order.

Dated this 6th day of May, 2020.

_____
Susan R. Bolton
United States District Judge